**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **ANDREW MCGONIGLE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 1:26-cv-00719** |
| | ) | |
| **I.C. SYSTEM, INC.,** | ) | |
| | ) | |
| Defendant | ) | |

## I.C. SYSTEM'S MEMORANDUM IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION

Defendant I.C. System, Inc., by and through undersigned counsel, hereby submits this Memorandum in Support of its Motion to Deny Class Certification.

## INTRODUCTION

This TCPA putative class action concerns debt-collection calls placed by LiveVox on behalf of Defendant I.C. System, Inc. ("IC"). Plaintiff alleges he heard a prerecorded hold message upon answering a call. Discovery in this case has established how the calls and hold messages work. If no IC representative is immediately available, the LiveVox platform might play a prerecorded hold message. But neither IC nor LiveVox has data showing a message played during any particular call. Determining if a message played during any particular call therefore requires recipient-specific evidence. The absence of common classwide evidence—and the predominance of the individual evidentiary issues—dooms class certification.

## RELEVANT FACTS

Plaintiff proposes the following nationwide class:

> All persons throughout the United States (1) to whom Defendant placed, or caused to be placed, a call, (2) directed to a number

> assigned to a cellular telephone service, but not assigned to a person with an account in collections with Defendant, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) from four years prior to the filing of this complaint through the date of class certification.

Compl. ¶ 29.

According to Plaintiff's own definition, actual use by IC of an artificial or prerecorded voice message during a call directed to the putative class member's phone number is therefore an express condition of membership in the class. *Id.* The proposed period begins March 16, 2022 and extends through the date of certification, if a class is certified. *Id.*; *see* Compl. at 8 (dated March 16, 2026).

inContact, Inc., which acquired LiveVox, Inc. in January 2024, provided the technology used to place IC's outbound calls. Ex. A, Declaration of Laurence Siegel (Sept. 20, 2026) ("Siegel Decl."), ¶¶ 1, 5. The platform attempts to connect an answered call to an available IC representative and could, if configured to do so, play a hold message if no representative is immediately available. *Id.* ¶¶ 6–7. The possibility that a message could play does not establish that it played during any particular call. *See id.* ¶¶ 8–9, 14.

LiveVox's retained data contains no field identifying whether the hold message played. *Id.* ¶¶ 9–10, 15. Call duration, disposition, and agent-connection information do not establish playback. *Id.* ¶¶ 14, 18. Recordings begin only after an IC representative joins and therefore do not capture any preceding hold message. *Id.* ¶¶ 11, 13. LiveVox cannot generate from its retained records a list or count of calls during which the message played. *Id.* ¶¶ 16–17.

IC likewise has no independent source of message-playback data. *See* Ex. B, Declaration of Michelle K. Dove ("Dove Decl.") ¶¶ 8-20. Its account histories, call-attempt records, and wrong-number dispositions do not establish whether the hold message played. *Id.*

## LEGAL STANDARD

A defendant may seek denial of class certification under Rule 23(c)(1)(A), coupled with a request to eliminate class allegations under Rule 23(d)(1)(D), without awaiting the plaintiff's affirmative certification motion. *See Oliver v. Navy Federal Credit Union*, 167 F.4th 106, 111–12 (4th Cir. 2026) (holding that this is the appropriate procedure for a defendant to challenge class certification at the pleading stage or any other time). Indeed, Rule 23 itself requires that "[a]t an early practicable time after a person sues or is sued as a class representative, the court *must* determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). Nothing in that text "vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939–40 (9th Cir. 2009). And regardless of which party raises the question, the burden of establishing Rule 23's requirements remains on the plaintiff. *See Doctor v. Seaboard Coast Line R.R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976); *Royal Mile Co. v. UPMC*, 40 F. Supp. 3d 552, 578–79 (W.D. Pa. 2014).

*Oliver* addressed the situation of a court deciding a defendant's motion to deny class certification before discovery. The court was therefore limited to the face of the complaint. *Oliver*, 167 F.4th at 112–14. That limitation does not apply here. IC's motion rests on an already developed record demonstrating the absence of playback data, including Siegel's and Dove's declarations, along with Plaintiff's own expert's declaration. The Court can therefore assess the demonstrated limits of Plaintiff's proposed class identification method in light of the evidence.

The party seeking certification bears the burden to affirmatively demonstrate compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Court must conduct

a rigorous analysis, including consideration of merits issues as needed to determine whether the certification requirements are satisfied. *See id.* at 350–51.

The Fourth Circuit also requires that proposed class members be readily identifiable by reference to objective criteria. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014); *see also Career Counseling, Inc. v. AmeriFactors Financial Group, LLC*, 91 F.4th 202, 206–08 (4th Cir. 2024) (reaffirming that requirement). Although a plaintiff need not identify every member before certification, the plaintiff must establish an administratively feasible way to determine membership without extensive individualized factfinding or mini-trials. *See EQT Prod. Co.*, 764 F.3d at 358; *Career Counseling, Inc.*, 91 F.4th at 206, 211.

To support certification under Rule 23(b)(3), the Plaintiff must prove that common questions predominate over individual questions, and that class litigation would be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). The predominance inquiry requires examination of the evidence and methods by which the disputed issues would actually be resolved. *EQT*, 764 F.3d at 357, 366–67.

## ARGUMENT

### I. The Proposed Class Is Not Ascertainable

An objectively worded definition does not establish that the persons satisfying it can actually be identified through an administratively feasible classwide means. *See Career Counseling*, 91 F.4th at 211. Here, the missing fact that Plaintiff would need to prove for every putative class member is actual playback of a prerecorded message during a call. The available records identify instances of calls. But they make no distinction between calls that included the hold message and calls that did not.

**a. *EQT* requires examination of the actual burden of identifying members.**

In *EQT*, the plaintiffs sought unpaid royalties from coalbed methane production. The certified ownership classes included persons identified in producers' ownership schedules and their successors. Some schedules were about twenty years old and did not reflect subsequent transfers. Identifying successors required examination of land records complicated by heirship, intestacy, and title defects. *EQT*, 764 F.3d at 359.

The district court largely glossed over those difficulties, noting only that ownership changes could be determined from local land records. The Fourth Circuit held that it had failed to rigorously analyze the administrative burden. It rejected the contention that ownership could be resolved later because it concerned entitlement to royalties: ownership was necessary both to recovery and identification of members. The court vacated certification and remanded for closer consideration of the affected population, identification burdens, management tools, and possible revisions to the definitions. *Id.* at 358–60. *EQT* thus requires scrutiny of how membership will actually be determined, even when existing records identify some members and the missing information also bears on the merits. *See id.* at 359, 361.

**b. *Career Counseling* distinguishes transmission recipients from qualifying members.**

In *Career Counseling*, the plaintiff sought to represent nearly 59,000 recipients successfully sent the same advertising fax. Because the statutory prohibition covered receipt on stand-alone fax machines but not online fax services, transmission records did not establish membership. *Career Counseling*, 91 F.4th at 207–11.

The plaintiff subpoenaed recipients' telephone carriers. Responses indicated that more than 20,000 recipients did not obtain online fax services from those carriers. The plaintiff inferred that they used stand-alone machines. But recipients could obtain online services

elsewhere; Charter, for example, could not determine which technology its subscribers used. *Id.* at 211–12.

The Fourth Circuit affirmed denial of certification. The evidence undermined the proposed method notwithstanding the plaintiff's argument that no recipient had been shown actually to use another provider's online service. As the district court found, individual inquiry remained necessary. *Id.* at 211–12. The plaintiff had to support its identification method with evidence, rather than infer the qualifying fact from records that did not establish it. *See id.* at 206–07, 212. The court affirmed based on the failure to establish ascertainability alone, without reaching predominance or superiority. *Id.* at 212 n.6.

**c. *Davis* rejects an unproven method of identifying wrong number recipients.**

In *Davis v. Capital One, N.A.*, No. 1:22-cv-00903, 2023 U.S. Dist. LEXIS 189255 (E.D. Va. Oct. 20, 2023) (Trenga, J.), the plaintiff challenged prerecorded debt-collection calls to a cellphone number reassigned from a consenting customer. His proposed nationwide class required calls to cellphone numbers not assigned to current account holders and use of an artificial or prerecorded voice. *Id.* at *1–3. The class thus required distinguishing noncustomers from the broader population called.

The plaintiff's expert proposed using calling records, reassignment data, reverse-number searches, and carrier subpoenas, but never fully implemented her methodology. *Id.* at *15–18. Capital One's testing indicated that approximately 75 percent of the 666 numbers identified as potential members appeared to belong to its customers. *Id.* at *17, *21. Proposed sources also could not reliably supply certain historical subscriber information. *Id.* at *20–21, *24. The district court excluded the expert's opinions and denied certification. *Id.* at *26, *29–32, *39, *aff'd*, 2025 U.S. App. LEXIS 21916, at *11–14 (4th Cir. Aug. 25, 2025) (unpublished).

The Fourth Circuit affirmed. It rejected the contention that the district court had required identification of every member before certification. The deficiency was the absence of a reliable, administratively feasible identification method avoiding extensive individualized factfinding. *Davis*, 2025 U.S. App. LEXIS 21916, at *15–16. The court affirmed on ascertainability and expressly declined to reach predominance. *Id.* at *14–15.

**d. *Smith* applies the same requirement to prerecorded reminder calls.**

In *Smith v. ExamWorks, LLC*, 2026 U.S. Dist. LEXIS 213088 (D. Md. Sept. 21, 2026), the proposed class challenged prerecorded medical-examination reminders and excluded recipients who had provided their cellphone numbers directly to ExamWorks. The plaintiff's expert Aaron Woolfson identified 5,552 unique cellphone numbers associated with purported prerecorded calls. But his analysis did not establish which recipients satisfied the additional membership condition. *Id.* at *14, *17–18.

ExamWorks's schedulers regularly obtained or confirmed numbers during conversations, but its system did not consistently record those exchanges. Separating qualifying recipients required review of individual case notes. Applying *EQT*, *Career Counseling*, and *Davis*, the court held that no administratively feasible identification method had been demonstrated. That failure independently required denial of certification. *Id.* at *18–19.

**e. The records here omit the event required for class membership.**

The corresponding qualifying fact here is actual playback of a prerecorded message. A list of numbers dialed by LiveVox might identify the broader population, just as the transmission records did in *Career Counseling*. And identifying numbers belonging to someone other than the debtor could narrow that population. But it would not establish which calls included the hold message—and thus, cannot establish which calls allegedly violated the TCPA.

Even a perfectly accurate reassignment analysis would not establish the necessary playback facts. Reassignment data, subscriber searches, and carrier records concern the phone number and its subscriber; they cannot supply the missing record of whether a prerecorded message played during the call. *See* Siegel Decl. ¶¶ 9–10, 15; Dove Decl. ¶¶ 8-20. The available recordings also cannot fill that gap because they begin only *after* an IC representative joins. Siegel Decl. ¶¶ 11, 13; Dove Decl. ¶¶ 8-20.

Determining membership in the class therefore requires evidence from each individual recipient. Only the individual answering the call could testify to what occurred when the call was answered. This fact further raises individual issues of credibility and reliable recollection that would spawn numerous mini-trials. Any proposed process must explain how those accounts can be evaluated, disputed recollections resolved, and membership determined without extensive individualized proceedings. Consistent with *EQT*, the problem cannot be deferred merely because playback also relates to the merits of the claim. And under *Career Counseling*, *Davis*, and *Smith*, identifying potential claimants does not substitute for a reliable method of identifying actual class members. *See Career Counseling*, 91 F.4th at 211–12; *Davis*, 2023 U.S. Dist. LEXIS 189255, at *17–18, *29–32, *aff'd*, 2025 U.S. App. LEXIS 21916, at *15–16; *Smith*, 2026 U.S. Dist. LEXIS 213088, at *17–19. Without such a method, the proposed class is not ascertainable.

## II. Individual Questions about Playback Defeat Predominance

The same evidentiary gap independently defeats certification under Rule 23(b)(3). Predominance requires examination of how liability will be proved, not simply whether Defendant used the same calling platform. *See EQT*, 764 F.3d at 366–67.

Plaintiff's claim depends on use of an artificial or prerecorded voice during each allegedly violative call. *See* 47 U.S.C. § 227(b)(1)(A)(iii); Compl. ¶ 64. Proof that LiveVox initiated calls on IC's behalf does not establish playback of a prerecorded voice message. Siegel Decl. ¶¶ 14, 18.

Nor does proof that LiveVox *could* play the message establish that it *did so* whenever a particular call was answered. *Id.* ¶¶ 7, 15–17. The platform's capability is common to the calls; actual playback of prerecorded messages is not established by that capability.

Neither IC's records nor LiveVox's retained data can resolve that question. Siegel Decl. ¶¶ 9–10, 15–17; Dove Decl. ¶¶ 8-20. Call duration, disposition, and agent-connection information do not establish playback. Siegel Decl. ¶¶ 14, 18; Dove Decl. ¶¶ 8-20. Recordings cannot supply the answer because they begin only *after* an IC representative joins. Siegel Decl. ¶¶ 11, 13; Dove Decl. ¶¶ 8-20. Even if Plaintiff identifies every cellphone number called and establishes which belonged to someone other than the intended debtor, he still fails. Proof that a prerecorded message played during any call remains absent.

*Smith* illustrates the distinction between a common calling practice and common proof of liability. There, prerecorded appointment reminders were used, but consent depended on individual communications between recipients and schedulers. Those recipient-specific exchanges defeated predominance because the plaintiff had not established a common method of resolution. 2026 U.S. Dist. LEXIS 213088, at *29–37.

Here, the individualized issue concerns playback itself. For each claimed violation, the factfinder would need evidence establishing what the recipient heard when answering. IC would be entitled to contest:

1) whether the recipient heard a recording;

2) whether the account concerned the identified call; and

3) whether the recollection reliably established playback.

Resolving these queries favorably for Plaintiff would not prove them for anyone else.

The inquiries concern the conduct necessary to establish liability, not merely calculation of damages. A common determination that the hold message qualifies as a prerecorded voice would establish the legal consequence only *if* the message played. It would *not* establish that the message played during any specific call. That essential element requires recipient-specific proof. Individual questions therefore predominate and certification under Rule 23(b)(3) must be denied.

## III. A Class Action Would Not Be Superior to Individual Adjudication

Rule 23(b)(3) requires Plaintiff to establish that a class action would be superior to other available methods of fairly and efficiently adjudicating the controversy. The likely difficulties in managing a class action are expressly relevant. Fed. R. Civ. P. 23(b)(3)(D). Here, the same evidentiary gap that defeats ascertainability and predominance prevents Plaintiff from demonstrating a manageable class trial.

Establishing LiveVox's ability to play the hold message, the circumstances under which it could play, and Plaintiff's experience would not establish what occurred during calls to other recipients. *See* Siegel Decl. ¶ 7. Each additional claim would require proof that the message actually played. And IC would be entitled to challenge that proof. Neither retained playback data nor recordings of the relevant portion of the call would provide a common way to resolve those disputes. Siegel Decl. ¶¶ 9–11, 13, 15–17; Dove Decl. ¶¶ 8-20.

A questionnaire or affidavit procedure could collect individual assertions. But it would not supply a common answer or eliminate the need to resolve contested accounts. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) ("Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications."). Plaintiff must explain how playback can be determined without extensive individualized proceedings. *See EQT*, 764 F.3d at 358. The possibility of collecting statements from potential claimants does not demonstrate that their claims

can be tried efficiently as a class. IC would have the right to challenge any such statement. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("A defendant has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership as it does to challenge the elements of a plaintiff's claim."); *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 U.S. Dist. LEXIS 117713, at *16–17 (M.D.N.C. July 27, 2017) (recognizing a defendant's right "to object and oppose any unfounded or incorrect claim" (citation omitted)).

Nor would separating liability from damages solve the problem. Whether the message played is a predicate to liability, not an issue limited to calculating damages after liability has been established. A common ruling on the legal status of the hold message would leave that predicate unresolved for every call and every putative class member. *See EQT*, 764 F.3d at 366–67 ("[T]he mere fact that the defendants engaged in uniform conduct is not, by itself, sufficient to satisfy Rule 23(b)(3)'s more demanding predominance requirement.").

The availability of statutory damages does not supply the missing method of proof. Efficiencies that might follow from aggregating small claims are not enough. Plaintiff must demonstrate that this proposed class can actually be adjudicated through a fair and manageable proceeding. *See* Fed. R. Civ. P. 23(b)(3)(D). The necessity of recipient-specific proof concerning playback defeats that showing.

## IV. Plaintiff's Expert Supplies No Reliable Method for Identifying Actual Hold Message Recipients

Plaintiff has produced the "Declaration of Aaron Woolfson" to support class certification. Ex. C, Woolfson Decl. (Oct. 9, 2026) (excerpted to include Exhibits 2 and 9). In his declaration, Woolfson claims he can identify calls conveying a prerecorded message. *Id.* ¶¶ 2–3. But he never explains how.

His proposed database operations are designed to identify wireless status, reassignment indicators, and other recorded characteristics. Woolfson Decl. ¶¶ 27–29, 33–34. Each of those characteristics *may* be implicated in this case. But none would demonstrate that LiveVox played a message during a particular call. Moreover, his declaration fails to address the undisputed evidence that neither IC nor LiveVox retains data showing the recording played during any particular call. *See* Siegel Decl. ¶¶ 9–10, 15–17; Ex. D, IC Am. Interrog. Resps. Nos. 2–4. Nor does Woolfson explain how he will overcome the absence of data or other evidence that a hold message was played. He in fact ignores that paramount issue entirely.

**a. <u>Woolfson's proposed analysis ignores the available records' established limitations.</u>**

LiveVox's declaration establishes that its retained records do not identify whether the hold message played. Siegel Decl. ¶¶ 9–10, 15. Duration, disposition, and agent-connection information do not establish playback. *Id.* ¶¶ 14, 18. Recordings begin only after an IC representative joins, excluding any preceding hold message. *Id.* ¶¶ 11, 13. IC has no independent data supplying the missing information. Dove Decl. ¶¶ 8-20.

Woolfson identifies no contrary data, recording, or alternative source. He simply ignores this undisputed evidence. Nor does he explain why LiveVox's description of its records is wrong or how the fields LiveVox identifies as insufficient could nonetheless establish playback of a prerecorded voice message. The only case-specific litigation material listed in his statement of materials relied upon is the Complaint. That is not evidence. Neither the Siegel declaration nor IC's discovery responses appear in his list. Woolfson Decl. ¶ 25. His declaration thus offers no analysis of the *evidence* establishing the limitations of the very records he proposes to examine.

**b. <u>Woolfson's methodology does not perform the task his opinion promises.</u>**

Paragraphs 2–3 assert that a reliable method identifies calls involving conveyance of a prerecorded message. Woolfson Decl. ¶¶ 2–3. The ensuing methodology fails to substantiate that claim. *See id.* ¶¶ 27–34.

Woolfson proposes importing calling records into a database and filtering for number format, structured data, dates, dispositions or durations, wireless status, and reassignment indicators. Woolfson Decl. ¶¶ 31–34. Those operations may identify calls to wireless numbers and indications that numbers were disconnected or reassigned. But they do not establish that a prerecorded message was played during any specific call.

*Smith* is instructive on this point as well. Woolfson was plaintiff's expert in that case. *See* Woolfson Decl. Ex. 2 (listing *Smith v. ExamWorks, LLC*, No. 8:21-cv-02746-PX (D. Md.)). The court questioned his assumption that calls longer than six seconds necessarily delivered a prerecorded message. His supporting test was years old. And he had performed it on a different system. 2026 U.S. Dist. LEXIS 213088, at *14 n.3. The court did not decide the motion to exclude, but denied it as moot because certification failed even considering his opinions. *Id.* Here, Woolfson identifies no tested duration rule for this platform at all.

His reference to dispositions and durations does not cure the omission. *See* Woolfson Decl. ¶¶ 29, 33(d). Indeed, his only disposition filter selects calls whose disposition indicates "the transmission of a call (and/or a duration)," not the playing of a message. *Id.* ¶ 33(d). He identifies no specific disposition code establishing playback, no duration threshold distinguishing calls with the message from calls without it, and no testing validating either inference. He supplies no decision rule for resolving the playback question at all.

The problem is therefore not merely that Woolfson has omitted computer code: he has omitted the substantive method the code would implement. A general explanation of how SQL

organizes and queries information does not establish that the information necessary to identify this class exists. *See* Woolfson Decl. ¶¶ 26–30.

**c. Woolfson's case-specific work does not validate his playback opinion.**

Woolfson claims that his report reflects independent analysis of *data and documents provided by Defendant and third parties*. Woolfson Decl. ¶ 5. But he fails to identify any such material. His list of case-specific litigation materials identifies only the Complaint. And he reports no completed analysis establishing playback. *Id.* ¶ 25. IC has produced account histories and call-attempt records. But those records do not establish that an outgoing hold message played. Dove Decl. ¶¶ 8-20. Woolfson's proposed examination of calling records is described prospectively: he "will start" by opening the files and "will then" import and filter them. Woolfson Decl. ¶¶ 30–33. He reports no completed test distinguishing calls during which the message played from calls during which it did not. Nor does he address IC's and LiveVox's lack of data establishing playback. The report gives no indication that it was tailored to fit the facts here. Its caption, in fact, places this action in the "United States District Court for the Eastern District of Florida," a court that does not exist. *Id.* at 1.

His sole case-specific example concerns the reassignment status of Plaintiff's telephone number. Woolfson Decl. ¶ 46 & Ex. 9. But this is not a telemarketing case. The calls here are not robocalls placed to purchased lists of numbers. IC is a debt collector trying to contact specific individuals its creditor-clients claim owe them money. *See* Compl. ¶¶ 9, 15; Ex. D, IC Am. Interrog. Resps. Nos. 5–6. Woolfson's example does not determine playback even for Plaintiff's call, much less demonstrate a method applicable to other recipients. His concluding opinions likewise return to wireless numbers, reassignment information, and subscriber identification. Woolfson Decl. ¶¶ 47–49. The declaration's initial promise to identify prerecorded-message recipients is unsupported by the analysis that follows.

**d. <u>Woolfson's own prior work as a rebuttal expert demonstrates his failures here.</u>**

Woolfson himself has been critical of the same type of clumsy analysis from an expert in another TCPA case. In *Jackson v. Athena Bitcoin, Inc.*, No. 4:24-cv-00331-MW-MJF (N.D. Fla.), Woolfson scrutinized whether another expert's identified numbers satisfied the relevant communication criteria. He examined separate delivery-status records to determine which messages were delivered. *See* Ex. E, Woolfson Decl., ECF No. 46-5 (filed Mar. 3, 2025) ("Jackson Decl."), ¶ 37. He criticized the inclusion of numbers without qualifying messages and reported identifying 631 such numbers. *Id.* ¶¶ 40–42. He also faulted the absence of underlying databases and analytical instructions, while identifying his own SQL statements as an exhibit. *Id.* ¶¶ 42–43.

His declaration here suffers from similar lethal deficiencies. Unlike the delivery-status evidence he examined in *Jackson*, the retained records here do not establish the qualifying event—*i.e.*, the outgoing hold message. Woolfson neither identifies substitute evidence nor demonstrates a reliable inference overcoming that limitation. And although he states that he "construct[s] all SQL statements [him]self," he supplies no SQL queries implementing his proposed analysis in this case—the same omission he faulted in *Jackson*. *Compare* Woolfson Decl. ¶ 30, *with* Jackson Decl. ¶¶ 42–43. The irony is clear. Woolfson's criticism in *Jackson* exposes his own deficiency here.

**e. <u>Accepting his reassignment analysis would still leave class membership unresolved.</u>**

The Court need not reject Woolfson's ability to classify wireless numbers or analyze reassignment information to reject his declaration as proof of ascertainability. He may indeed be an expert on those issues. But his analysis leaves the decisive playback question unanswered. That remains true even if every proposed operation works exactly as described. What matters here is the ability to identify persons who heard the hold message. Woolfson asserts that he can identify those recipients. Woolfson Decl. ¶¶ 2–3. But he supplies no method. *See id.* ¶¶ 47–49.

That distinction is central to identifying class members. Evidence that a prerecorded message played is a paramount factual predicate to liability. *Davis* affirmed denial of certification where the plaintiff failed to demonstrate a reliable identification method avoiding extensive individualized factfinding. *Davis*, 2025 U.S. App. LEXIS 21916, at *11–16. Woolfson's declaration fails to supply that method here. It promises to analyze records without explaining how those records can establish the event they do not even address. Recipient-specific proof would remain necessary.

## V. Rule 23(b)(1) Does Not Provide an Alternative Basis for Certification

Plaintiff also asserts that certification is warranted under Rule 23(b)(1). Compl. ¶¶ 56–58. That provision permits a class action in two narrow circumstances: where separate suits would risk inconsistent judgments that "establish incompatible standards of conduct for the party opposing the class," Fed. R. Civ. P. 23(b)(1)(A), or where an individual judgment would, "as a practical matter," dispose of or substantially impair the interests of absent class members, Fed. R. Civ. P. 23(b)(1)(B). *See Dukes*, 564 U.S. at 361–62 & n.11 (describing (b)(1) classes as reserved for cases where individual adjudications "would be impossible or unworkable," such as where the defendant is obliged by law to treat class members alike or where claimants compete for a limited fund). Neither circumstance exists here.

Rule 23(b)(1)(A) addresses separate adjudications that would establish incompatible standards of conduct for the defendant. Individual findings that a prerecorded message played during one call but not another would create no such incompatibility. IC could comply with both judgments. Likewise, a judgment awarding damages to one recipient and denying recovery to another would reflect the evidence of their respective calls, rather than impose conflicting obligations. *See Gaston v. LexisNexis Risk Solutions, Inc.*, 483 F. Supp. 3d 318, 340–41 (W.D.N.C. 2020).

Rule 23(b)(1)(B) concerns adjudications that would, as a practical matter, dispose of absent persons' interests or substantially impair their ability to protect those interests. Plaintiff's individual claim does neither. A finding that Plaintiff heard a prerecorded message is specific to Plaintiff. It would not establish that any other person did or did not hear a prerecorded message. *See id.*; *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 689–90 (D. Md. 2017).

*Ginwright* rejected Rule 23(b)(1) certification of TCPA claims where differing outcomes concerning individual recipients would not prejudice the rights of others. 280 F. Supp. 3d at 689–90. The same reasoning applies here. Each recipient's claim concerns a separate call and separate evidence of playback. The possibility of different outcomes does not transform those independent claims into a mandatory class.

## VI. <u>Plaintiff Cannot Obtain Certification Under Rule 23(b)(2)</u>

Rule 23(b)(2) cannot save Plaintiff's class claims. That section requires conduct applicable generally to the class such that a single injunction or corresponding declaratory judgment would provide relief to the class as a whole. It does not authorize certification of claims for individualized monetary relief. *Dukes*, 564 U.S. at 360–61. That the Complaint requests an injunction does not provide a work-around of Rule 23(b)(3)'s requirements.

That distinction is particularly relevant here. Plaintiff seeks statutory damages for individual calls, including enhanced damages for willful or knowing violations. *See* Compl., Prayer for Relief ¶¶ f–g. Entitlement to those awards depends on whether a prerecorded message actually played during each call. *See* 47 U.S.C. § 227(b)(3). Neither IC's nor LiveVox's records establish that as fact. Siegel Decl. ¶¶ 9–10, 15–17; Dove Decl. ¶¶ 8-20. An injunction governing future conduct would not resolve those historical questions or determine any class member's entitlement to damages.

In *Ginwright*, the court rejected certification of TCPA claims under Rule 23(b)(2) because the action predominantly concerned statutory damages. 280 F. Supp. 3d at 690. The court also ruled that individualized consent determinations prevented the requested injunction from supplying relief to the class as a whole. *Id.* Plaintiff likewise cannot use Rule 23(b)(2) to obtain class treatment of individualized monetary claims that fail Rule 23(b)(3).

IC does not contend that requesting damages categorically forecloses a separately supported injunction-only class. *Gaston* certified such a class where the defendants admitted a generally applicable disclosure practice and a single injunction could address that practice. 483 F. Supp. 3d at 341–42. But Plaintiff must still establish an independently appropriate classwide prospective remedy. Here, his demand for damages and generalized injunction language do not supply that showing.

Nor does the Complaint identify a sufficiently specific injunction supporting a separate injunctive class. Its prayer requests an injunction against “violative behavior,” including calls using an artificial or prerecorded voice. Compl., Prayer for Relief ¶ e. That formulation leaves the Court to supply the substantive terms of the requested relief. Artificial or prerecorded voice calls are not categorically unlawful. And a directive prohibiting calls that violate the TCPA would be illusory since it would merely restate existing law.

The Fourth Circuit has rejected that approach to injunctive relief. In *Davis v. Richmond, Fredericksburg & Potomac R.R. Co.*, the court vacated a provision prohibiting further Title VII violations while affirming provisions requiring specific corrective actions. 803 F.2d 1322, 1328 (4th Cir. 1986). A general command to “obey the law” improperly exposes a defendant to contempt proceedings for conduct unlike and unrelated to the violation adjudicated. *Id.* Rule 65(d) likewise requires an injunction to identify the prohibited or required conduct with reasonable specificity.

*Bone v. University of North Carolina Health Care System*, 678 F. Supp. 3d 660, 708–09 (M.D.N.C. 2023). "Comply with the TCPA" offers no specific guidance. *Ginwright* applies that principle directly to TCPA class certification: a request that the defendant comply with the TCPA and follow the law does not furnish a proper basis for certification under Rule 23(b)(2). 280 F. Supp. 3d at 690. Plaintiff's general request to prohibit unlawful calls supplies no more concrete remedy here.

The request for declaratory relief fares no better. A declaration concerning IC's general obligations under the TCPA would not establish whether any particular recipient heard a prerecorded message. A declaration that IC violated the TCPA as to each member would require recipient-by-recipient proof of playback. Declaratory relief supplies no common answer. Neither request establishes certification under Rule 23(b)(2) would be proper.

## CONCLUSION

IC respectfully requests that the Court deny class certification under Rule 23(c)(1)(A) and order that the pleadings be amended to eliminate the class allegations under Rule 23(d)(1)(D). Plaintiff cannot establish a reliable, administratively feasible method of identifying recipients of the hold message. The absence of common proof of playback also defeats predominance and superiority. And Woolfson's proposed analysis does not supply the missing evidence. Neither Rule 23(b)(1) nor Rule 23(b)(2) provides an alternative basis for certification.

Dated: November 6, 2026

Respectfully submitted,
*/s/ Noah J. DiPasquale*

Noah J. DiPasquale
Virginia State Bar No. 96519
*Counsel for I.C. System, Inc.*
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: noah.dipasquale@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

William Robinson
4067 South Four Mile Run Dr., #302
Arlington, VA 22204
wprlegal@gmail.com
Anthony I. Paronich
(admitted pro hac vice)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

*/s/ Noah J. DiPasquale*
Noah J. DiPasquale

*Counsel for I.C. System, Inc.*