**EXHIBIT C**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **ANDREW MCGONIGLE**, *on behalf of himself and all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>**I.C. SYSTEM, INC.**<br><br>*Defendant.* | Case No: 1:26-cv-00719-MSN-WEF<br><br>Presiding:<br>Hon. MICHAEL S NACHMANOFF<br>Referral:<br>Hon. WILLIAM E. FITZPATRICK |

## DECLARATION OF EXPERT AARON WOOLFSON

I, Aaron Woolfson, state and declare as follows:

1. I have been retained by the Plaintiff to determine whether there is a reliable methodology for analyzing the call records in this lawsuit reflecting the calling done by or on behalf of the Defendant I.C. System, Inc. ("I.C. System" or "Defendant" as captioned).

2. More specifically, I have been asked to opine whether there is a reliable method to identify which calls in Call Detail Records ("CDRs") maintained by or on behalf of Defendant were placed to telephone numbers that were wireless, and involved the conveyance of a pre-recorded voice message to that telephone number; and, calls that were placed to numbers where the telephone number to which the call had been made had received at least one call while it was contained within the Reassigned Number Database ("RND"), as well as other number assignment databases.

3. Using methodologies that I have applied in several hundred matters using

data that is required to be made available by the FCC for purposes stemming from the TCPA, it is my opinion that there is a reliable method to identify those calls to telephone numbers that had been placed to a wireless number, and involved the conveyance of a pre-recorded message, and of those, which had been indicated as likely reassigned or disconnected, according to the RND and other databases, including the Local Exchange Routing Guide (LERG), various Local Number Portability (LNP) databases, and Central Office Code Assignment Records from the Noth American Numbering Plan Association (NANPA).

4. It is also my opinion that there is a reliable method to identify calls with other particular criteria based on the additional types of information included in the CDRs, records of leads/calls, and/or other records maintained by or on behalf of Defendant or in any available database, such as, for example, from which source a number had been obtained.

5. This report reflects the results of my study of the underlying facts, independent analysis of the data and documents provided by the Defendant and third parties. My rate is $440.00 per hour for expert engagements, and $675.00 per hour for depositions, trial, and arbitration appearances.

6. I am personally familiar with the matters that are contained within this declaration, and if called to testify, I can accurately and competently testify as to them.

**Qualifications and Expert Engagements.**

7. I have over 25 years of experience in developing and analyzing databases and telephone systems and establishing the interfaces between telephone systems and the networks that convey calls. I have implemented call recording and call data collection and retention systems for commercial, government, aerospace, telecommunications, and payroll industries. My professional experience includes serving as an expert witness in cases where I evaluated the technical aspects of telephone systems, including whether they had a random or sequential number

generator.

8. My qualifications and curriculum vitae are attached to this expert report as Exhibit 1. A list of the other cases in which I have testified as an expert at trial or by deposition during the previous four years is attached as Exhibit 2. I have been qualified by both Federal and State courts.[1] My testimony has been relied upon by courts in both individual and class actions,[2] by plaintiffs and defendants. My opinions have also been relied upon in arbitrations, including TCPA claims.

9. I was the developer of the automated Verification of Deposit ("VOD") and Verification of Mortgage ("VOM") system that was used by Chase, Wells Fargo, Bank of America, as well as some regional banks and mortgage lenders, to facilitate the review of mortgage applications by call center staff. These systems required a great deal of integration between the telephone systems and the financial institution's computer systems, and relied heavily on my deep understanding of database and time keeping integration technologies. It also required me to build interfaces to the ACH[3] exchanges, and with Global Payments and other large automated electronic inter-exchanges of financial information. Other processes necessitated integrating fax and OCR[4] capabilities as well as enhanced call routing – inbound and outbound – including predictive elements of enhanced call processing, and the precise timings of these

---

[1] *ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court) (2017) 19 Cal. App. 5th 277, footnote 5, at page 8, ("[T]here was evidence in the record that Woolfson had previously qualified as an expert in both state and federal court ...") *(ABM Industries Overtime Cases, A132387, A133077, A133695, 19 Cal. App. 5th 277 (Dec. 11, 2017; pub. ord. Jan. 10, 2018))*. (Exhibit 3).

[2] "The Court notes that Mr. Woolfson's expert report appears to include information related to the merits of the case in addition to class certification issues." *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, Case No 3:13-cv-01556-JLS-DHB (S.D. Cal.), Sep. 21, 2015 ECF 132 at page 3.

[3] Automated Clearing House ("ACH").

[4] The OCR ("Optical Character Recognition") process as integrated into the automatic monitoring of telephone calls in real time to determine whether the call was a voice or fax call, and if a fax call, decoding the contents of each fax-page into machine readable text *while* a fax was being transmitted to the bank's computers for integration with a database.

events.

10. I am the inventor of "Canvas", a programming language that I developed for interfacing between telephone systems and telephone networks, capable of processing hundreds of thousands of calls a day. To date, hundreds of millions of calls have been handled by Canvas on behalf of call centers, financial institutions, conference calling companies, and organizations offering Interactive Voice Response ("IVR") services. [5]

11. I have developed highly available, upwardly scalable databases for use in the telecommunications industry. The databases and telephone systems that I have personally developed and/or coded are used by telephone companies and call centers throughout the United States and Canada to catalogue and index various customer-calling activities. Some of the companies that have used my databases and/or telephone equipment (which I personally created and manufactured) have included Japan Telecom, Experian, Bank of America, Wells Fargo Bank, JP Morgan, Bank of the West, Cogent Communications, Zone Telecom (ANPI), Aion Networks, Smartcall Conferencing, and First National Collection Bureau, Inc., and the United States government, including the Department of Justice.

12. Through my hands-on work experience in developing databases and telephone systems, I have become very familiar with the technology related to telephone systems and their interfaces with the networks through which calls are processed, received, and transmitted. I am also familiar with how dialing systems work, and how telephone systems handle inbound and outbound calls.

13. I have been responsible for the design and development of specialized hardware and software systems that are highly dependent upon the capabilities of the

---

[5] IVR is a technology that allows a computer to interact with humans through the use of voice and/or DTMF tones input via a telephone keypad. DTMF ("Dual Tone Multi Frequency") is the signal you generate when you press a telephone's touch keys.

computers upon which they run, and are in use at mission-critical applications, including Patriot Missile (SAIC, Patriot RTOS), Air Traffic Control Systems (Kongsberg Geospatial Corporation), and Point Lepreau Nuclear Generating Station, New Brunswick, Canada (Energié NB).

14. I held a CPCN[6] ("Certificate of Public Convenience and Necessity") – a special license and compliance certification granted to companies that provide essential public services, such as telephone corporations. The California Public Utilities Commission granted my most recent CPCN on July 18, 2017. This was a reissue of my initial CPCN granted to TelSwitch on June 10, 1994, which I held for approximately 18 years before taking a hiatus from providing public telephone services. The license originally granted to me in 1994 allowed me to interconnect the equipment that I designed, built, and programmed with the phone network for the purpose of providing wholesale and retail telecommunications services.

15. I have also been qualified as an expert in matters involving the TCPA and have previously been engaged on behalf of defendants and plaintiffs to analyze records of calls (and texts).

16. For example, in *Wright v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EJK (M.D. Fla.), I was engaged on behalf of the defendant in a case in which the Court certified a class of consumers who received pre-recorded calls to their cellular telephone numbers.

17. I am not aware of any court that has issued an opinion that I was not qualified as an expert related to my opinions on the use of telephone systems or involving analysis of call records.

---

[6] Certificate of Convenience and Necessity U-5410-C granted to TelSwitch, Inc. on 06-10-1994 (Decision 94-06-022). Reissued as U-7327-C on 07-18-2017 (Decision 17-07-009).

**Expertise Specifically Related to Database work.**

18. I was relied upon as an expert witness in the case of *Hines v. KFC*, filed in the United States District Court, Southern District of California (Case No. 09cv2422 JM (POR). In *Hines*, the court granted plaintiff's motion for class certification and certified plaintiff's meal period and rest break claims based on my analysis after finding that I am an "expert in the compilation and analysis of databases …."

19. I was expert for the plaintiffs in *Albert H. Cicairos, Frank A. Daniel, Richard Wheeler and George Thompson v Summit Logistics, Inc.* and *Kenneth Bluford v Safeway Stores, Inc.* (Case No. CV014837 [Consolidated with Case No. CV028541] Superior Court of California, County of San Joaquin). I have been told that, among other cases, *Bluford v Safeway, Inc.* established the framework for what eventually became known as AB1513 and Labor Code section 226.2, which governs compensation in the piece rate context.

20. In addition, I served as an expert in the *ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court). Relying heavily upon my expert finding, the Appellate Court reversed the trial court's ruling and certified the plaintiffs' proposed wage and hour classes. The court noted that there was sufficient evidence contained within my expert report to support certification of the classes and subclasses, and that my experience was sufficient to allow my expert report to be admitted as evidence for that purpose. (Exhibit 3).

21. I was also expert in *Beatriz Aldapa and Elmer Avalos v. Fowler Packing Company, Inc., Ag Force, LLC, Fowler Marketing International LLC,* (Case No. 1:15-CV-00420-DAD-SAB ED, Ca.), where the employer used Datatech to maintain an accounting of piece-work and non-piece-work hours worked by agricultural workers. The court order in *Fowler Packing* is attached as Exhibit 4.

22. I have applied similar methods to structure large amounts of unstructured data on behalf of defendant *Verizon Wireless* and *Collecto* in *Lofton v. Verizon* (Case No. 3:13-cv-05665) and *Lofton v. Collecto* (Case No. 4:13-cv-03293-YGR). In *Lofton v. Collecto*,

I was ordered by the District Court of the Northern District of California to reconstruct a database from information that was in defendant Verizon's possession that Plaintiff stated was "un-structurable" and useless for purposes of analysis and determination of the results of calls that took place. I was able to complete the re-structuring of Verizon's data so that the parties could reach a successful settlement. The portion of the Court's Order from *Lofton v. Verizon* instructing me to create a database from Verizon's unstructured data is attached as Exhibit 5.

23. I engaged on behalf of plaintiff Michael Anthony in *Michael Anthony v. The Federal Savings Bank, National Bancorp Holdings, Inc. and FDE Marketing Group LLC* (Case No. 1:21-cv-02509, ND, Il, Eastern Div.) in which I undertook a comprehensive analysis of the defendants records in support of class certification. The order granting class certification is attached as Exhibit 6.

24. I was also engaged on behalf of plaintiff Robert Mason in *Robert Mason et al v. Spring EQ, LLC* (Case No. 5:24-cv-01833-MWC-AGR, CD, Ca). In the court's order denying defendant's motion to decertify the class, the course stated that the plaintiff has sufficiently identified a method by which an expert can separate residential from business numbers and that "The fact that most of the numbers identified by Defendant did not appear in the post-Waterfall dataset, as Mr. Woolfson attests, further suggests the method is reliable. Defendant's new evidence does not compel a different result" (ECF 166, page 12 of 14). The court's order is attached as Exhibit 7.

**Materials and Documents Reviewed and Relied Upon.**

25. In conducting my analysis and preparing my conclusions and opinions, I relied upon the following materials and information:

**I. Materials that I relied upon:**

(a) The Complaint. (ECF 1).

**II. Electronic database resources that are available:**

(a) Index of the North American Numbering Administrator's Numbering Plan Area Codes that are TCPA-eligible, sorted by location ("Numbering Plan, Appendix A").

(b) The National Exchange Carrier Association ("NECA") North American Numbering Plan 1000-block assignments database.

(c) External, publicly available databases for use in identifying the type of service (e.g. wireless), and the Federal TCPA-eligible area-code -list that is published daily by the FTC[7] and whether a number had been migrated or reassigned.

(d) Various databases evidencing number assignment, including the Local Exchange Routing Guide (LERG), various line-type identification databases[8,9], and Central Office Code Assignment Records from the North American Numbering Plan Administrator (NANPA).

(e) Reassigned Number Database ("RND") made available to me by Somos.[10],[11]

---

[7] TelSwitch, Inc's FTC Organization ID is 10159990-70991, Subscription Account Number (SAN) 10418065-518065-26.

[8] The historical information *does not* contain subscriber information, only carrier of record and line type. Before number portability, this would have been a simple task of looking at the Local Exchange Routing Guide ("LERG"), or absent access to the LERG, finding the area codes and prefixes from an online collection of national phone books.

[9] In *Perrong v Call Identified as Connor* (Case No. 1:22-cv-04479-CPO-EAP, DC, New Jersey, Camden Vicinage), "plaintiff has queried the database of iConectiv, the company charged by the Federal Communications Commission to administer the Number Portability Administration Center, which is the master database which lists which telephone provider services a particular number, among other information required to route telephone calls to the proper provider" (ECF 3). ). I was not the expert in *Perrong v Caller Identified as Connor*, nor did I provide the data.

[10] TelSwitch, Inc. maintains a RND Registration ID # C657465476.

[11] TelSwitch, Inc. is registered as an "exempt organization" – an organization that "does not make calls". This is consistent with the FCC's order stating "This approach is consistent with how the Commission approached the National Do-Not-Call Registry, which contains phone numbers that should be used only for compliance with the Commission's do-not-call requirements." (FCC 18-177, para 26)

**Methods and Tools Used to analyze Records.**

26. I create and analyze databases using Structured Query Language (SQL). A database is a computerized compilation of data organized into tables, each table having columns (attributes), with column headings, and rows of information. Tables that share at least one attribute in common are "related." Tables without a common attribute may still be related via other tables with which they do share a common attribute. The pathways relating those separate tables are called "joins." Once tables have been related by a join, a user may view the combined information in the joined tables to derive new and/or useful information. To access such information, a user sends queries to the database, which executes the queries and retrieves the requested information from the tables in the database. A database, however, only recognizes queries written in complex "query languages." The most common query language is SQL. A proper query in this language consists of one or more "clauses." Common types of clauses are SELECT, WHERE, FROM, HAVING, ORDER BY, and GROUP BY clauses. Thus, to compose a proper inquiry, a user must understand the structure and content of the relational database as well as the complex syntax of the specific query language.

27. When analyzing call records, I start by creating a database to serve as a repository for the call records and any other related records. I then create database tables to accumulate the results of the associated RND queries that I can run against the FCC's Reassigned Number Database – queries that tag each call with a "*disconected*" for reassigned or disconnected, "*active*" for active (e.g. not reassigned nor disconnected),

28. Finally, if asked, I also then create a set of tables to accumulate the results of the other identifiers related to the telephone numbers, such as *isPorted*, *isWireless*, *mostRecentPortDate*, *state*, and *operating (telephone) company*[12],[13] that can be used to identify

[12] This full information is available by sending a subpoena to the current successor Local Number Portability Administrator ("LNPA").

whether a number was wireless, or wireline, and if ported, the date when the number had moved, or transitioned from one carrier to another.

29. By using a set of standardized SQL queries, I am able to tag each record according to (a) any data field contained in the call records, including the telephone number called, the date of a telephone call and its' duration (and/or) the disposition of any call; and, (b) any data field contained in any associated leads records; and, (c) whether the telephone number to which the call had been placed was assigned to a cellular service; and, (d) whether the number bears indicia, through one or multiple databases, that it was reassigned. .

30. This is precisely the task that I will undertake for Plaintiff in this matter, guided by my many years of experience with these precise tasks. I construct all SQL statements myself and am the sole author of all work product associated with the methodologies I propose.

**Steps I will take to Organize and Analyze the Calls.**

31. I will start by opening each of the files that contain call records data (collectively referred to as "Call Detail Records" or "CDRs"). I do this to (a) determine the format that the records are stored in, and then (b) to determine what pre-processing that I would need to conduct in order to achieve an import of the calls.[14]

32. I will then import the CDRs file into SQL database tables using Microsoft SQL™ Enterprise Manager. I will then place the totality of the t into a database called *dbo.calls*, upon which I will run SQL statements.

---

[13] "someone could subpoena Iconectiv for that information, but it wouldn't be part of his subscription to the service." (PMQ testimony of iConectiv taken 11/13/2025, in *Michael Smith et al. v Examworks et al*, Case No. 1:21-cv-02509, DC, Md., page 104, attached as ECF 228-1 to *Federal Michael Anthony et al v. The Federal Savings Bank et al*, Case No. 1:21-cv-02509, ND, Il, Eastern Div.)

[14] I typically do not need to apply any pre-process to the CDRs, as most CDRs originate from electronic call data capture systems that are already Electronic Data Interface ("EDI") capable.

33. I will then apply a set of filters to include only calls that:

a. that were made either (a) to a number that contained precisely ten digits and started with a 2 through 9, or (b) to a number that contained precisely eleven digits and started with a 1 followed by a 2 through 9; *and*,

b. that were contained within structurable data; *and*,

c. that had an associated date; *and*,

d. that contain the disposition indicating the transmission of a call (and/or a duration); *and*,

e. Were placed to area codes that were subject to the TCPA, according to the FTC (Appendix A); *and*,

f. Whether the telephone number was wireless as of the date of the call and not ported within fifteen (15) days; *and*,

g. Whether the number was contained in the Reassigned Number Database, or any other databases to which I have access and if the number was called *after* it had been reassigned or disconnected.

34. To identify which telephone numbers were called that were also on the Reassigned Number Database, I prepare a file that contains the dates called, and the published-date (which is currently the 16th of each month proceeding the call-date). I then upload the file to the Somos Hub website to obtain the tagging of whether the number was reassigned or disconnected within the period covered by the publish date. By performing these sets of queries, I am able to identify which calls were transmitted to telephone numbers that were wireless, and of those, how many were on the Reassigned Number Database or other databases indicating number reassignment.

**Telephone Companies databases maintain subscriber information in electronic format as part of their standard record keeping.**

35. Wireless and wireline carriers maintain historical records that can be used to identify the contact information (Exhibit 8, properly redacted). As part of record-keeping requirements imposed upon them by the FCC, telephone companies must maintain items that are responsive to subpoenas. They also use this information to for their own customer service purposes.

36. The line type and customer information attributes are also maintained to support local-number-portability ("LNP") requests. In other words, when someone wishes to move their number from one carrier to another, they are required to provide certain requisite information, such a name and contact information, which must match then match the other carrier's records from where the number was being ported. These exchanges of port-in/port-out requests are handled electronically, and exchanged between and amongst the phone carriers[15] using a process called Electronic Data Interchange ("EDI") protocol. The EDI process encompasses a well-defined, regimented set of informational exchanges, and provides an efficient manner to handle, and route, port-in and port-out requests using a common set of data attributes.

37. As an example, I was the expert for Verizon Wireless in *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-05665-YGR (N.D. Cal.). In the course of my work on that case, I came to understand that Verizon Wireless maintained records of which belonged to which subscribers. In addition, I learned which types of information, which included line subscribership details that were maintained on a historical basis.

---

[15] LNP includes both non-mobile and mobile carriers. Companies, regardless of the carrier type are required to support Local Number Portability ("LNP"). The National Portability Administration Center ("NPAC") is responsible for maintaining the database of the national numbering inventory, and as part of the FCC's order granting authority to iConnectiv to maintain this, they agreed to continue to make data available for TCPA compliance purposes. (FCC 15-35, ¶ 142).

Similarly, I am aware that other companies, such as AT&T Wireless and T-Mobile, maintain similar information for both compliance and customer support purposes. This information is also maintained so that calls (and texts) for invoicing purposes can be rated and billed properly, and so that subpoenas can be properly responded to.

38. I also formerly ran a consumer telephone company, called Tel-One Network Services, which was similarly expected to maintain contact information. Part of my responsibility at Tel-One Network Services was to interface with other telephone companies such as Pacific Bell (now AT&T) during the process of onboarding new subscribers, and maintaining accurate customer information, because Tel-One was expected to work with the proper department, depending upon the type of the product being offered.

**Telephone Companies databases maintain subscriber information and residential / business line classifications in electronic format as part of their standard record keeping.**

39. I understand that carriers themselves maintain records that identify the residential or business status of telephone numbers. This is because wireless and wireline carriers maintain historical records that can be used to identify the residential or business classification for any particular phone number, as well as contact information.

40. As part of record-keeping requirements imposed upon them by the FCC, telephone companies must maintain those items for the reporting of residential and business line classifications, as well as being able to respond to subpoenas. They also use this information to route customer service calls to the correct residential or business service center.

41. The line type and customer information attributes are also maintained to support local-number-portability ("LNP") requests. In other words, when someone wishes to move their number from one carrier to another, they are required to provide certain requisite information, such a name and contact information, which must match

then match the other carrier's records from where the number was being ported. These exchanges of port-in/port-out requests are handled electronically, and exchanged between and amongst the phone carriers using a process called Electronic Data Interchange ("EDI") protocol. The EDI process encompasses a well-defined, regimented set of informational exchanges, and provides an efficient manner to handle, and route, port-in and port-out requests using a common set of data attributes.

42. I have become familiar with the manner in which telephone companies maintain these records to handle their own customer service and reporting requirements, as well as to provide support for the EDI protocol. Both in my role in providing billing and customer service software to phone companies, and in my role as a consulting expert for phone companies who are involved in litigation, I am familiar with the type of information that phone companies maintain on behalf of their customers.

43. As an example, I was the expert for Verizon Wireless in Lofton v. Verizon Wireless (VAW) LLC, No. 13-cv-05665-YGR (N.D. Cal.). In the course of my work on that case, I came to understand that Verizon Wireless maintained records of which numbers were residential or business subscribers. In addition, I learned which types of information, which included line subscribership details that were maintained on a historical basis. Similarly, I am aware that other companies, such as AT&T Wireless and T-Mobile, maintain similar information for both compliance and customer support purposes. This information is also maintained so that calls for invoicing purposes can be rated and billed properly, and so that subpoenas can be properly responded to.

44. I also formerly ran a consumer telephone company, called Tel-One Network Services, which was similarly expected to maintain both business and residential information on subscribers' numbers, as well as contact information. Part of my responsibility at Tel-One Network Services was to interface with other telephone companies such as Pacific Bell (now AT&T) during the process of onboarding new subscribers, because we had to work with the proper business or residential department, depending upon the type of the product being offered.

45. This is precisely the method that I undertook on behalf of plaintiff in

*George Moore v. Club Exploria, LLC* (Case 1:19-cv-02504, ND. IL.) and on behalf of plaintiff in *Michael Anthony v. The Federal Savings Bank, National Bancorp Holdings, Inc., and FDE Marketing Group LLC* (Case No. 1:21-cv-02509, ND, Il, Eastern Div.). And in *Robert Mason et al v. Spring EQ, LLC* (Case No. 5:24-cv-01833-MWC-AGR, CD, Ca)

**Conclusions.**

46. According to the Reassigned Number Database, the Named Plaintiff's number ending in -5410 was listed as in its' current active status as of the RND publish date of 06/16/2024. (*See* Exhibit 9). Using the features of the RND to which I have access, I will be applying the same methodology as that which I applied to the named Plaintiff's number ending in -5410 to all telephone numbers appearing in the Defendant's records.

47. It is therefore my opinion that using the information contained in the RND database, I will be able to reliably identify those calls in the records that had been placed to any telephone numbers of so similarly situated numbers that had been wireless, and of those which had been wireless, those that had been on the RND.

48. It is also my opinion that there is a reliable method to identify calls with other particular criteria based on the additional types of information included in the CDRs, records of leads, and/or other records maintained by or on behalf of Defendant or in any available database.

49. Finally, I also understand that there is a reliable method to identify the individuals to whom telephone numbers belong. This is because wireless and wireline carriers maintain historical records that can be used to identify the residential or business classification for any particular phone number, as well as contact information, which can be obtained from a number of sources[16], including the

[16] I understand that Carla Peak, expert for Saggio in *Jason Saggio et al v. Medicredit, Inc.* (Case No. 4:22-cv-01005-JAR, ED, Mo, Eastern Div.) described a method that could be reliably applied to further identify those proposed putative class members, using data from PacificEast, Nexxa, or Lexis Nexis" (footnote continued)

carriers themselves by querying the FCC's databases maintained by the North American Numbering Plan Administrator and the Local Number Portability Administrator.[17]

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed October 9th, 2026 in Pleasant Hill, California.

Aaron Woolfson

---

to identify residential class members. *See* decl. Peak, doc. 108-1 at 2-13 (*Jason Saggio et al v. Medicredit, Inc.*) and depo. Peak, doc. 108-2 (*Jason Saggio et al v. Medicredit, Inc.*) The court's order (ECF 126) is attached as Exhibit 10.

[17] TelSwitch, Inc. reply comments to FCC Notice of Proposed Rulemaking "Combatting Illegal Robocalls Through FCC Numbering Policies, WC Docket 26-49" (Exhibit 11) (https://www.fcc.gov/ecfs/document/26109987506/1 last visited 10/09/2026)

# EXHIBIT 2

**Aaron Woolfson's List of Cases in which Testimony was Provided**
**(as a Deponent or as an Expert at Trial within approx. previous four years)**

- *Taylor Carroll et.al. v SGS Automotive Services, Inc.* (Case No. 16-537-SDD-RLB (MD, La)
- *Adrian Diaz et. al. v. Bald Eagle Security Services, Inc.* (Case No. 37-2018-00009703-CU-OE-CTL, Superior Court of California, Los Angeles County)
- *Christopher Dueker et. al. v. CRST Expedited, Inc.* (Case No. 2:18-cv-08751-FMO-FFM, ND Ca)
- *Bruce Wright, Jorges Valdes, Edwin Diaz, individually and on behalf of himself and all others similarly situated, v. eXp Realty, LLC, a Washington Limited Liability Company* (Case No. 6:18-CV-01851-PGB-TBS MD Fl)
- *Joseph Cabardo, Donnabel Suyat, Mactabe Bibat, Marissa Bibat, Alicia Bolling, Renato Manipon, Carlina Cabacongan, And John Dave Cabacongan, on behalf of all current and former employees and the State Of California v Marilyn Patacsil and Ernesto Patacsil* (Case No. 2:12-cv-01705-TLN-KLN, ED, Ca, Sacramento Div.)
- *Robert Fischer et al v. Trivita, Inc.*
(Case No. 6:19-cv-02333-CEM-EJK, MD Fl, Orlando Division)
- *Austin and Marrero et al v Public Reputation Management*
(Case No. 9:20-CV-80161-RS, SD Fl.)
- *Deanna Hicks et al v Houston Baptist University*
(Case No. 5:17-cv-00629-FL, E.D., NC, Western Div.)
- *Paramjit Lalli et al v. First Team Real Estate Orange County*
(Case No. 8:20-cv-000270-JLS-ADS, C.D. Cal., Southern Division)
- *Jodi Judson et al v. Goldco Direct, LLC*
(Case No. 2:19-cv-06798-PSG-PLA, CD, Ca)
- *ABM Industries Overtime Cases*
(Case No JCCP 4502, San Francisco Superior Court)
- *Kenneth Johansen, et al. v. Bluegreen Vacations Unlimited, Inc.*
(Case No. 9:20-cv-81076-SMITH, S.D. Fla.)

- *Jeremy Gilmore et al v. Vansh, Inc.*
  (Case No. HG18930348, Superior Court of California, County of Alameda)

- *Aldapa et al. v. Fowler Packing, Co., et al.*
  (Case No. 1:15-CV-00420-DAD-SAB, ED, Ca, Fresno Division)

- *Anderson et al v. The Berry Man, Inc. and All About Produce, Inc. et al.*
  (Case No. 16-cv-0377, Superior Court of California, County of San Luis Obispo)

- *Raymunda E. Menjivar v Angelo's Gourmet Deli, Inc., Jae Choi, Anna Lee, et al*
  (Case No. C20-00885, Superior Court of California, County of Contra Costa)

- *Amanda Boardman et al v Green Dot Corporation*
  (Case No. 21-cv-00174-FDW-DSC, W.D., Nc, Charlotte Div.)

- *Annette Barnes et al v. Allsup Employment Services, LLC.*
  (Case No. 1:21-cv-21121, S.D. Fl,, Miami Div.)

- *Pineda et al. v Lithographix, Inc.*
  (Case No. BC612372, Superior Court of California, County of Los Angeles)

- *Andrew Perrong et al. v Victory Phones LLC.*
  (Case No. 2:20-cv-05317-GEKP, E.D. PA)

- *Floyd Steve Bales et al v. Bright Solar Marketing, LLC*
  Case No. 5:21-cv-00496-JSM-PRL, M.D. Fl, Ocala Div.

- *George Moore et al v. Club Exploria, LLC*
  Case No.1:19-cv-02504, ND. Illinois, Eastern Div.

- *Eric Laguardia, Sophia Wingate, Lindsay Rucker and Nicole R. Austin v Designer Brands Inc., F/K/A DSW, Inc., an Ohio Corporation; and DSW Shoe Warehouse, Inc., a Missouri Corporation.* (Case No. 2:20-cv-02311-SDM-EPD, SD OH, Eastern Div.)

- *Varas et al v Paras et al* (Case No. RG20072221, Superior Court of California, County of Alameda, Eric C. Davidson Courthouse)

- *Marisol Gomez and Ignacio Osorio et al, v. J Jacobo Farm Labor Contractor, Inc. et al*
  (Case No. 1:15-cv-01489, ED, Ca)

- *Robert E. Stafford, Jr., Melissa Bonetti, Michelle Layton, Herbert Mallet, Jacqueline Johnson, Cathrine Allen, Devron Jones, Laura Shope, Tabitha Daniel, Damian Prentice, Debra Call, Laquasha Osaghee, Ronda Cole, Marquita Smith, Jennifer Wester et al v. Bo Jangles' , Inc.* (Case No. 3:20-cv-266-MOC, WD, Nc, Charlotte Div.)

- *Michael Anthony v. The Federal Savings Bank, National Bancorp Holdings, Inc. and FDE Marketing Group LLC* (Case No. 1:21-cv-02509, ND, Il, Eastern Div.)

- *Mark Fitzhenry v Brokers Data, Inc.* (Case No 2:21-cv-04043-RMG, DC, Sc)

- *Nathan Rowan v Brock Pierce* (Case No 2:21-cv-04043-RMG, DC, PR)

- *Samantha Doup v Van Tuyl Group LLC et al* (Case No. 3:20-cv-02742-X, ND, TX)

- *Teresa E. Mendez Villegas, Maria Navarro, Loyda Aguilar, Olimpia Cano De Peral et.al. v. Duarte Nursery, Inc., Jeff Duarte, John Duarte, Patricia Lopez, Engracia Lopez* (Case No. 2014-212, Superior Court of Stanislaus County)

- *Annette Bayles v Hertz Corporation* (Case No. 1:22-cv-01092-JRS-MKK, SD, IN, Indianapolis Div.)

- *Dennis Glazer et al v. Sunnyvale Massage LLC and Lisa Meteyter* (Case No. CIV 527399 Superior Court of California, County of San Mateo).

- *Juan Navas et al. v. Fresh Venture Foods, et al.* (Case No. 17-CV-02222, Superior Court of California, County of Santa Barbara)

- *Carbajal et al v. Imperial Maintenance et al* (Case No. STK-CV-UOE-2016-0001100, Superior Court of California, County of San Joaquin)

- *Faucett et al v. Move.com et al* (Case No. 2:22-cv-04948-ODW-AS, CD, Ca, Western Div.)

- *Mackey et al v. Bankers Life & Casualty et al.* (Case No. JCCP No. 4954, Superior Court of California for the County of San Diego)

- *Dancey et al v.* Walmart, Special Coordinated Proceeding 5136, *Tamara Dancy v. Walmart Inc., et al* (Superior Court, County of Santa Clara, Case No. 19CV360648)*;*

and *Lynette Branco v. Walmart Associates, Inc.* (Superior Court, County of Santa Clara, Case No. CV-20-002265).

- *Mohamed Mallem et al, v C&C Security Patrol, Inc.*; and, *C&C Security Patrol, Inc.* (cross-complainant) v *Manning & Kass, Ellrod, Ramirez*, *Trester LLP* (cross-defendant); and, *Manning & Kass, Ellrod, Ramirez, Trester LLP* (cross-complainant) v *C&C Security Patrol, Inc.* (cross-defendant) (Case No. RG16814153, Superior Court of California, County of Alameda)

- *US EEOC and Anonymous Plaintiff Intervenors 1 through 4 v. Fresh Venture Foods LLC, and Babe Farms, Inc.* (Case No. 2:21-CV-07679-CBM-DFM, CD, Ca)

- *Ma de Jesus Vergara, Pahola Ramos, Roberto Reyes, et al v. Kombu Kitchens SF, LLC (dba Nybll), Keven Thibeault, Kristen Thibeault, Alfonso Ventura et al* (Case No. RG20057449, Superior Court of California, County of Alameda) and *Aja de Coudreaux, Zena Evans, Daeun Hwang, Vera Lopez, Myriah Sims, Nicole Vassallo et al v. Kombu Kitchens SF, LLC (dba Nybll), Keven Thibeault, Kristen Thibeault, et al* (Case No. RG20058323, Superior Court of California, County of Alameda)

- *Julie Campbell, Diana Bickford And Kerrie Mulholland, Et Al V. Sirius Xm Radio, Inc.* (Case No. 2:22-cv-02261-CSB-EIL, CD, Il, Urbana Division)

- *Dan L. Boger v. The Maids International, LLC* (Case No. 8:24-cv-01466-TDC, DC, Md.)

- *Robert Hubble v. Loan Depot.com LLC* (Case No. 1:24-cv-11173-TLL-PTM, ED, Mi.)

- *Michael Smith et al v. Examworks, LLC and GEICO et al*. (Case No. 8:21-cv-02746-PX, DC, Md)

- *Byron Espanol et al v. Capital Vision Services, LLC, d/b/a myEye Dr. Optometry of Florida, LLC* (Case No. 6:24-cv-01024-PGB-DCI, MD. Fl)

- *Michael Osborn et al v. Hogarth California LLC et al* (Case No. CGC-22-598537, State of California, County of San Francisco)

- *Lee Abraham et al v. Loan Depot LLC* (Case No. 2:23-cv-00728-SMB, DC, Az)

- *Diaz et al. v Tri-City Auto Wash, Inc. et al* (Case No. 21CV003425, Superior Court of California, County of Alameda)

- *Robert Mason v. Spring EQ LLC* (Case No. :24-cv-01833-MWC-AGR, CD, Ca)

- *Tatiana Eastman et al v. United Parks and Resorts, Inc.* (Case No. 6:24-cv-01534-PGB-DCI, MD. Fl, Orlando Div.)

- *Sara Reyes V Five Diamond Cold Storage, Inc., Grow Smart Labor, Inc., Pedro Arellano-Moya And Jorge Esteban Fuentes* (Case No. 1:24-cv-00028-JLT-SAB, ED Ca, Fresno Div.)

- *Irma Barbosa and Cecilia Mata et al v. Delta Packing Company of Lodi, Inc. aka "Delta Fresh"; Salinas Farm Labor Contractor, Inc.; Ernie Costamagna, an Individual, Annamarie Costamagna, an Individual.* (Case No. 2:20-cv-01096-TLN-CSK, ED, Ca., Sacramento Div.)

- *Bronstin v Servbank* (Case No. 1:25-cv-06182, ND, Il)

- *George Moore et al. v. C&N Construction, Inc.* (Case No. 1:25-cv-04568, ND, Il)

- *Ramirez, et al. v.Clearwater Nursery, Inc., et al* (Case No. 11-cv-0083, Superior Court of California, County of San Luis Obispo)

- *Peggy Banks et al v. Sunrun, Inc.* (Case No. 4:24-cv-07877-JST, ND, Ca)

- *Rick Shafer et al v. Toyota of Boardman* (Case No. 4:25-cv-00941-BMB, ND, Ohio, ED)

- *Raikka Brent et al v My Goals Solutions Inc. et al.* (Case No. 1:25-cv-03584-JPO, SD NY)

- *Andrew James Mcgonigle et al v. Shopperschoice.com et al, L.L.C.* (Case No. 25-cv-00152-SDD-RLB, MD, LA)

- *Shante Watson et al v. Georgia Auto Pawn, Inc.* (Case No. 1:25-cv-00906-LMM, ND, Georgia)

# EXHIBIT 9

| phoneNumber | status | clientId | somosDate |
|---|---|---|---|
| (XXX) XXX-5410 | disconnected | C657465476 | 1/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 2/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 3/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 4/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 5/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 6/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 7/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 8/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 9/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 10/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 11/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 12/16/2022 |
| (XXX) XXX-5410 | disconnected | C657465476 | 1/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 2/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 3/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 4/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 5/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 6/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 7/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 8/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 9/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 10/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 11/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 12/16/2023 |
| (XXX) XXX-5410 | disconnected | C657465476 | 1/16/2024 |
| (XXX) XXX-5410 | disconnected | C657465476 | 2/16/2024 |
| (XXX) XXX-5410 | disconnected | C657465476 | 3/16/2024 |
| (XXX) XXX-5410 | disconnected | C657465476 | 4/16/2024 |
| (XXX) XXX-5410 | disconnected | C657465476 | 5/16/2024 |
| (XXX) XXX-5410 | active | C657465476 | 6/16/2024 |
| (XXX) XXX-5410 | active | C657465476 | 7/16/2024 |
| (XXX) XXX-5410 | active | C657465476 | 8/16/2024 |
| (XXX) XXX-5410 | active | C657465476 | 9/16/2024 |
| (XXX) XXX-5410 | active | C657465476 | 10/16/2024 |
| (XXX) XXX-5410 | active | C657465476 | 11/16/2024 |
| (XXX) XXX-5410 | active | C657465476 | 12/16/2024 |
| (XXX) XXX-5410 | active | C657465476 | 1/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 2/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 3/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 4/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 5/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 6/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 7/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 8/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 9/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 10/16/2025 |

| | | | |
|---|---|---|---|
| (XXX) XXX-5410 | active | C657465476 | 11/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 12/16/2025 |
| (XXX) XXX-5410 | active | C657465476 | 1/16/2026 |
| (XXX) XXX-5410 | active | C657465476 | 2/16/2026 |
| (XXX) XXX-5410 | active | C657465476 | 3/16/2026 |
| (XXX) XXX-5410 | active | C657465476 | 4/16/2026 |
| (XXX) XXX-5410 | active | C657465476 | 5/16/2026 |
| (XXX) XXX-5410 | active | C657465476 | 6/16/2026 |
| (XXX) XXX-5410 | active | C657465476 | 7/16/2026 |
| (XXX) XXX-5410 | active | C657465476 | 8/16/2026 |
| (XXX) XXX-5410 | active | C657465476 | 9/16/2026 |