# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
*Alexandria Division*

**ANDREW MCGONIGLE,**
*on behalf of himself and others similarly situated,*
Plaintiff,

*v.* Civil Action No. 1:26-cv-00719-MSN-WEF

**I.C. SYSTEM, INC.,**
Defendant.

**DEFENDANT I.C. SYSTEM, INC.'S FIRST SUPPLEMENTAL AND AMENDED ANSWERS AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES AND FIRST SUPPLEMENTAL AND AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUESTS FOR PRODUCTION**

**PRELIMINARY STATEMENT**

These supplemental and amended answers and responses are made pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and Local Civil Rules 26 and 33 of this Court. They supplement Defendant I.C. System, Inc.'s September 11, 2026 answers and responses. The objections stated on September 11, 2026 are incorporated and are not waived. These answers are based on information reasonably available to Defendant after a reasonable inquiry. They are made without waiving any objection as to relevance, materiality, privilege, work-product protection, confidentiality, proportionality, or admissibility, and without conceding that any identified person, document, or category of information is relevant or that any particular fact is true as alleged.

The Complaint alleges that, during an incoming call from Defendant, a prerecorded message stated words to the effect of "please hold while we connect you to an agent." inContact, Inc. ("inContact"), which acquired LiveVox, Inc., provided the technology used to place IC System's outbound calls, as set forth in the Declaration of Laurence Siegel, Vice President of Services and Operations of inContact, executed September 20, 2026 (the "Siegel Declaration"). For the February 3, 2026 call to the number ending in 5410, Mr. Siegel states that, following connection, the system attempted to connect the call to an available IC System representative. Siegel Decl. ¶ 6. He identifies that call at 8:31 a.m. The account history logs the February 3, 2026 attempt at 7:31:21 a.m. See ICS000010. If a representative was not immediately available, the system could, if configured, play a prerecorded message instructing the called party to hold for the next available representative. Siegel Decl. ¶ 7.

That is the message referred to here as the “Hold Message.” The Hold Message is not a campaign message delivered to each dialed number.

inContact investigated whether a prerecorded message played on the February 3, 2026 call. Its data and records do not contain a field or other indicator establishing whether a prerecorded hold message actually played before the attempted connection to a representative. Siegel Decl. ¶¶ 8–9. inContact’s call-detail records in general do not identify whether a prerecorded hold message played on a particular call. Siegel Decl. ¶ 10. Any recording begins only after a call is connected to an IC System representative, and does not capture what occurred before that connection. Siegel Decl. ¶ 11. If a call terminated before connection, no recording exists from which inContact can determine whether the Hold Message played. Siegel Decl. ¶ 13. Data showing that a call was placed, its duration, its disposition, or whether it was connected to a representative do not establish whether the Hold Message played. Siegel Decl. ¶¶ 14, 18. inContact has no report, data field, recording, log, or other retained record identifying the outbound calls during which a prerecorded hold message actually played, and it cannot use its existing records to identify that population of calls or to determine the number of such calls. Siegel Decl. ¶¶ 15–17. Defendant receives its call data from inContact and has no independent source of message-playback data.

A record that a number was dialed therefore does not establish that the Hold Message played. A “Wrong Number Claimed,” “Invalid,” or equivalent code does not establish that the Hold Message played. There is no inconsistency between Mr. Siegel’s statement that the system could, if configured, play a hold message when a representative was not immediately available, and the absence of any record showing whether it played. Those are different propositions. The absence of message-playback data is the absence of that data. It is not a refusal to produce records Defendant has. Defendant does not represent inContact. Experience with LiveVox in other litigation does not establish what this configuration recorded or retained.

**Supplemental production, October 7, 2026.** Defendant produces herewith, designated Confidential and subject to a protective order: Exhibit E, Extended Call Recording Storage Amendment (Rev. 3, May 31, 2019) to the LiveVox Master Subscription Agreement effective April 22, 2014, Bates ICS000065; and the Innovis Data Furnishers Reporting Agreement dated November 19, 2002, with transmittal, Bates ICS000066–ICS000071. The Cell Phone Consent Policy (ICS000044–ICS000046) and the Consumer Compliance Policy, Version 14.0 (ICS000047–ICS000064) are confirmed as the only versions of those policies.

Defendant's answers concerning (804) 238-5410 are drawn from the account records produced as Bates ICS000001–ICS000042, the February 9, 2026 Heidarpour letter (ICS000043), the Cell Phone Consent Policy (ICS000044–ICS000046), and the Consumer Compliance Policy (ICS000047–ICS000064). The corrected re-production of ICS000001–ICS000042 leaves (804) 238-5410 unredacted. The produced histories control over two transposed agent identifiers in the September 11 answer to Interrogatory No. 1: the December 8, 2025 attempt was Agent 51526 (ICS000004), and the February 3, 2026 attempt was Agent 51166 (ICS000010). Defendant produced the Cell Phone Consent Policy and the Consumer Compliance Policy as ICS000044–ICS000064 on October 6th, 2026, designated Confidential and subject to a protective order. Defendant has confirmed that these are the only versions of those policies, and that Defendant has no policy or procedure concerning the Hold Message. Until this lawsuit, Defendant was not aware that a hold message was playing.

Defendant reserves the right to supplement under Rule 26(e). Defendant is not presently withholding non-privileged responsive documents solely on the basis of a general confidentiality objection. Defendant will not produce unredacted non-party consumer identifiers except as already redacted under Fed. R. Civ. P. 5.2 and E.D. Va. Local Civil Rule 7(C), or pursuant to a protective order.

## SUPPLEMENTAL AND AMENDED ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 2**

*Identify all hardware, software, systems, and dialing platforms used in connection with calls to 804-238-5410.*

**RESPONSE: Defendant incorporates its September 11, 2026 objections. Subject to those objections: inContact provided the technology used to place the outbound calls to (804) 238-5410. Siegel Decl. ¶ 5. The attempts were logged in Defendant's collection-system account-history and ICE applications. See ICS000002–ICS000014 and ICS000020–ICS000042. If an IC System representative was not immediately available, the system could, if configured, play a prerecorded hold message. Siegel Decl. ¶ 7. Defendant has no document identifying an inContact application, database, campaign, table, or field that records whether that message played. inContact's records do not contain such a field. Siegel Decl. ¶¶ 9–10, 15. Defendant produces herewith Exhibit E to the LiveVox Master Subscription Agreement, Bates ICS000065. Exhibit E states that LiveVox records agent calls beginning when a call is bridged to an agent until the call ends, and that automated messages are not recorded. Defendant has no knowledge of the applicable configuration beyond what Mr. Siegel describes and what Exhibit E states: a hold message could play, if configured, when a representative was not immediately available, and recording begins only after connection to a representative. Siegel Decl. ¶¶ 7, 11; ICS000065.**

**INTERROGATORY NO. 3**

*Identify the system or database used by Defendant to document, record, or log such calls, including all fields that record the date, time, result, and disposition of each call.*

**RESPONSE: Defendant incorporates its September 11, 2026 objections. Subject to those objections: calls and recordings are memorialized in Defendant's databases ("ICE"). See ICS000002–ICS000014 and ICS000020–ICS000042. The fields reflected on those produced records are date/time, event, action,**

**description, user, account and debt identifiers, dialer designation, agent identifier, call time where captured, disposition, and telephone-number status. Those fields do not include a message-playback flag. inContact has no field or other indicator establishing whether a prerecorded hold message played before connection to a representative, and its call-detail records do not identify whether a hold message played on a particular call. Siegel Decl. ¶¶ 9–10, 14–15. Defendant has no data dictionary or separate field list for the Hold Message. The produced account histories and ICE summaries are the records of the fields used to log the attempts to (804) 238-5410.**

**INTERROGATORY NO. 4**

*Identify the total number of unique telephone numbers Defendant called or caused to be called using an artificial or prerecorded voice during the relevant period.*

**RESPONSE: Defendant incorporates its September 11, 2026 objections, including that this Interrogatory assumes a denied element of Plaintiff's claim and seeks a four-year, system-wide count before any class has been certified. Subject to and without waiving those objections: Defendant does not know. inContact cannot use its existing records or data to identify a population of calls during which a prerecorded message actually played, or to determine the number of such calls. Siegel Decl. ¶¶ 16–17. Defendant has no independent source of that data. Defendant therefore has not compiled, and cannot compile, a count of unique telephone numbers called using an artificial or prerecorded voice. Defendant denies that it used an artificial or prerecorded voice within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii). Defendant will supplement under Rule 26(e) if it later identifies responsive information.**

**INTERROGATORY NO. 5**

*Identify the number of those telephone numbers for which Defendant's records indicate that the called party was not the intended recipient or that a person indicated Defendant had reached the wrong number.*

**RESPONSE: Defendant incorporates its objections to Interrogatory No. 4. The phrase "those telephone numbers" is limited to numbers called using an artificial or prerecorded voice, a category Defendant cannot identify and denies. A wrong-number code does not establish that the Hold Message played. Subject to those objections, as to (804) 238-5410 only: Defendant's records reflect a "Wrong Number Claimed" disposition on December 8, 2025, on the Eleanor Nettles AT&T DIRECTV account (Account ID 408024955-1; Debt No. 187710880; Agent 51526), after which the number was coded Invalid, and a "Wrong Number Claimed" disposition on February 3, 2026, on the separately placed Michael Nettles Verizon account (ICS Reference No. 412908361-1; Debt No. 189549374; Agent 51166), after which the number was coded Invalid and later Cease / On Do Not Call List. See ICS000004, ICS000010, ICS000003, and ICS000020–ICS000042. Defendant has not undertaken a class-wide tally of wrong-number dispositions for a category of calls it cannot identify and will not do so absent a narrowed request or court order.**

**INTERROGATORY NO. 6**

*Identify the number of calls Defendant made, or caused to be made, to wrong or reassigned numbers after Defendant knew or had reason to know that the number was wrong or reassigned.*

**RESPONSE: Defendant incorporates its September 11, 2026 objections. This Interrogatory is overbroad, vague as to "knew or had reason to know," and not proportional to the extent it seeks a four-year class-wide count. It also assumes Hold Message playback that the records do not show. Subject to those objections, Defendant is unaware of any called it "made or caused to be made, to wrong or reassigned numbers after Defendant knew or had reason to know that the number was wrong or reassigned. With respect to (804) 238-5410: the number was associated with the Eleanor Nettles account by an Innovis address/phone append on December 4, 2025, and was coded Invalid after the December 8, 2025 "Wrong Number Claimed" disposition. See ICS000004 and ICS000005. The February 3, 2026 attempt was placed on a separately placed Michael Nettles Verizon account, with which Verizon associated the same number on or about February 2, 2026, coded "No AutoDialer." See ICS000014 and ICS000010. That attempt was not a redial of a number Defendant had already coded Invalid on the Eleanor Nettles account and then ignored. After the February 3, 2026 disposition, the number was coded Invalid on the Michael Nettles account. Defendant does not presently identify any subsequent outbound call to (804) 238-5410.**

**REQUEST FOR PRODUCTION NO. 16**

*All complaints, demand letters, lawsuits, or internal investigations concerning prerecorded calls to wrong or reassigned telephone numbers.*

**RESPONSE: Defendant incorporates its September 11, 2026 objections to every historical complaint or lawsuit against Defendant. Subject to that objection: Defendant has produced the Heidarpour February 9, 2026 demand at ICS000043. Processing of that demand on February 10, 2026 appears at ICS000003 and ICS000010. After a reasonable inquiry, Defendant is not aware of another complaint, demand letter, lawsuit file, or internal investigation concerning the Hold Message, including a Hold Message to a wrong or reassigned number. Defendant is not aware of a prior lawsuit concerning the outgoing Hold Message.**

**REQUEST FOR PRODUCTION NO. 17**

*Documents sufficient to identify each telephone number to which Defendant placed, or caused to be placed, a call using an artificial or prerecorded voice during the relevant period, including for each such telephone number: (a) the date and time of each call; (b) the call disposition; (c) the intended recipient; (d) the account associated with the telephone number; (e) any notation that the number was incorrect, reassigned, or belonged to the wrong person; and (f) whether Defendant contends it had prior express consent to place the call.*

**RESPONSE: Defendant incorporates its September 11, 2026 response. Defendant has no document responsive to this Request. inContact cannot identify, from its existing records, the calls during which a prerecorded hold message actually played, or the number of such calls. Siegel Decl. ¶¶ 15–17. Data showing that a call was placed, its duration, its disposition, or whether it connected to a representative do not establish playback. Siegel Decl. ¶¶ 14, 18. Call-attempt, disposition, and wrong-number coding for (804) 238-5410 is produced at ICS000002–ICS000014 and ICS000020–ICS000042. Those records do not identify any telephone number to which Defendant placed a call using an artificial or prerecorded voice, and they do not identify prior express consent from Plaintiff. Defendant does not contend that Plaintiff consented to be called at (804) 238-5410.**

**<u>SIGNATURE OF COUNSEL</u>**

Dated: October 7, 2026

Respectfully submitted,

*<u>/s/ Noah J. DiPasquale</u>*
**Noah J. DiPasquale**
Virginia State Bar No. 96519
*Counsel for I.C. System, Inc.*
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: noah.dipasquale@troutman.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 7, 2026, I served the foregoing Defendant I.C. System, Inc.'s First Supplemental and Amended Answers and Objections to Plaintiff's Interrogatories and First Supplemental and Amended Responses and Objections to Plaintiff's Requests for Production on all counsel of record via email, including:

William Robinson
319 N. Piedmont St., #1
Arlington, VA 22203
wprlegal@gmail.com

Anthony I. Paronich

(admitted pro hac vice)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

*/s/ Noah J. DiPasquale*
Noah J. DiPasquale
*Counsel for I.C. System, Inc.*